

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**DAVID W. HERCHER**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1538

COLLIN M. COLE
LAW CLERK

DORIA D. ARNTSEN
JUDICIAL ASSISTANT

March 13, 2018.

NOT FOR PUBLICATION

VIA ECF ONLY
Stephen Caplan

Juan Antonio Fernandez
7303 SE 118th Place
Portland, OR 97266

Subject: Juan Antonio Fernandez
Case No. 15-33009-dwh13

Greetings:

I write to explain my separate order ruling on Cheryl Mills's Motion for Clarification of the Order Directing Trustee Payments to the State of Florida Disbursement Unit[1] (clarification motion) and her Objection to Confirmation of Amended Plan (plan-modification objection).[2] I will deny the clarification motion in part, deny the confirmation objection, and confirm the amended plan. This letter constitutes my findings of fact and conclusions of law.

I.   **Procedural background**

Mills, the ex-wife of debtor, Juan Antonio Fernandez, filed a claim[3] for unpaid child-support and supplemental support totaling $40,468.87[4] and attorney fees in the initial amount of $124,054.86.[5] The parties agree that the support portion—$40,468.87—is entitled to priority, but they disagree about the extent, if any, to which the attorney fees are entitled to priority.

Fernandez filed an objection to Mills's claim before confirmation of his chapter 13 plan,[6] asserting that the attorney-fee portion was not entitled to priority treatment, but he withdrew the objection without prejudice.[7] According to him, the parties "agreed to disagree" on the priority

---

[1] Docket item 102.
[2] Docket item 122.
[3] Claim no. 3-2 (proof of claim).
[4] Proof of claim at PDF p. 19.
[5] Proof of claim at PDF p. 25.
[6] Docket item 53.
[7] Docket item 72.

Stephen Caplan
Juan Antonio Fernandez
March 13, 2018
Page 2

issue.[8] The withdrawal without prejudice was part of a resolution that allowed the plan to be confirmed without definitively resolving the priority dispute.[9]

Under Fernandez's confirmed plan,[10] he was required to continue paying $1,825 per month as a domestic-support obligation, which included repayment of arrears as ordered by the state court in Florida, where the parties divorced. These payments were to be made directly to the State of Florida. The trustee would pay $680 per month to Mills on her "allowed unsecured domestic support obligation," without prejudice to the amount, validity, or priority of her claim. If the state reduced the amount of the $1,825 monthly payments, he would increase the $680 monthly payments by an equal amount.

In July 2016, Fernandez filed a Motion for Order Directing Trustee Payments to State of Florida Disbursement Unit and Directing Florida Disbursement Unit to Credit Payments Made by Trustee.[11] He explained that the state has not credited the $680-per-month payments that the trustee had been making to Mills. Therefore, he asked the court to redirect all future $680 monthly payments to the state rather than to her and make a finding of the total amount that the trustee had paid so far, so that the state would credit it. After a hearing, Judge Dunn of this court entered an order granting both items of relief[12] on November 29, 2016. The order stated that Fernandez (through the trustee) had paid $10,450 to Mills as of that date. The order also required the trustee to make future monthly payments to the State of Florida Disbursement Unit in Tallahassee. The order did not determine the allocation of the $10,450, i.e., whether it should be allocated to child-support arrears or to attorney fees.

II. Clarification motion

In April 2017, Mills filed the clarification motion, requiring clarification of the November 29, 2016, order.[13] She reported that the state had been unable to determine whether the payments made under the chapter 13 plan were allocable to child-support arrears or to attorney fees.[14] The state court also requested clarification from this court "as to how, if at all, the $10,450 described in the [November 29, 2016] order . . . is to be credited towards [Fernandez's] Florida Child Support Obligation."[15] She therefore requested a determination that the $10,450 be allocated to her attorney fees, rather than to child-support arrears.[16] She also stated that "going forward it [will] not be in the best interest of the parties that the $680 payment to the Trustee [*sic*—should read 'by the Trustee'] be paid to the State of Florida Disbursement Unit."[17]

---

[8] Docket item 114 at 2.
[9] *Id.*
[10] Docket item 68; see *also* Order Confirming Plan at Docket item 73.
[11] Docket item 78.
[12] Docket item 89.
[13] Clarification motion.
[14] Clarification motion at ¶ 9.
[15] Clarification motion at ¶ 12.
[16] Clarification motion at p. 3.
[17] Clarification motion at ¶ 17.

The parties agreed that the clarification motion was appropriate for summary disposition[18] and filed memoranda and supporting documents.[19] After a hearing, they reported that they were in negotiations, and at their request I deferred consideration of the clarification motion and the plan-modification objection until February 2018, when they informed me that they were unable to agree.

To the extent that Mills has requested that the $680 payments be redirected to her personally instead of to the state, I deny the request. She has not stated a basis under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60 to set aside or amend the November 29, 2016, order.

With respect to the allocation question, I conclude that the $10,450 should be allocated to child-support arrears. Although Mills nominally seeks clarification of the November 29 order, that order did not purport to allocate anything; it merely calculated the amount that Fernandez had paid up to that point.

Mills's request is more accurately characterized as a request to interpret an ambiguity in the confirmed plan, because it was the plan that imposed the payment obligation and determined the treatment of her claim. A confirmed plan is construed "basically as a contract" according to state contract law.[20] Oregon courts first "examine [a contract's words] within the context of the entire contract in light of the circumstances underlying the contract's formation."[21] Because this provision deals with Mills's claim, the relevant circumstances include the parties' dispute regarding that claim.

Over the course of the 60-month plan, the trustee will pay a total of $40,800 toward the Mills claim (680 × 60 = 40,800). That amount is very close to $40,468.87, which is the portion of her claim that is undisputedly entitled to priority treatment. And it bears no resemblance to the attorney-fee portion of her claim.

Mills points out that a portion ($160) of Fernandez's direct payment to the state (as distinguished from the payments that he makes via the trustee) is already dedicated to the child-support arrearage.[22] If the $160 amount continues to be dedicated to the child-support arrears and the plan remains unmodified, he will end up overpaying the child-support arrearage by $9,931, and even if the $160 allocation stops, he will overpay by $331.13 (40,800 – 40,468.87). This overpayment will occur regardless of the $160 monthly direct payments. But, as discussed above, the confirmed plan contemplated that the state might reduce the amount that he was required to pay directly to it. Thus, the direct payments to the state have to be considered as an unknown and uncontrollable variable as of the time of confirmation. I must assume, then, that the plan erred on the side of caution by requiring that he make sufficient payments to cover the full child-support arrearage regardless of any changes that the state might make. Moreover, although

---

[18] Docket item 106.
[19] Docket items 110, 113-15.
[20] *Hillis Motors v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir. 1993) (chapter 11 plan treated as contract); *In re Brown*, 369 B.R. 595, 600 (Bankr. D. Or. 2006) (applying *Hillis* to chapter 13 plan).
[21] *Watkins v. Josephine County*, 243 Or. App. 52, 57-58 (2011); *Yogman v. Parrott*, 325 Or. 358, 361 (1997).
[22] Docket item 110 at ¶ 25.

Stephen Caplan
Juan Antonio Fernandez
March 13, 2018
Page 4

he has never conceded that any part of the attorney-fee portion of her claim has priority status, he must be aware of the possibility that at least some of the attorney-fee portion will turn out to have priority. Therefore, it was not at all unreasonable for him to have erred on the side of overpayment rather than underpayment.

If I accept Mills's position that the plan required the $680 monthly payments to go to attorney fees rather than to the child-support arrearage, I would have to conclude that the plan did not provide for any payment of the arrearage. Had Judge Dunn reached that conclusion before confirming the plan, he could not have confirmed it, because the plan was required by 11 U.S.C. § 1322(a)(2) to provide for payment of the priority child-support claim in full. I am disinclined to impose an interpretation that assumes the existence of a circumstance that would have prevented confirmation of a plan that was in fact confirmed.

Granted, if Fernandez never objects to the priority treatment of the attorney-fee portion of Mills's claim, I may ultimately have to conclude that the plan should not have been confirmed (which would not necessarily warrant confirmation revocation). Nevertheless, when confronted with one interpretation that might undermine the assumption that underlay confirmation and a second interpretation that definitely undermines it, I must choose the former.

### III. Objection to confirmation of amended plan

While the litigation over the clarification motion was pending, Fernandez filed a postconfirmation modification of his plan.[23]

As modified, the plan would treat Mills's claim[24] by paying the child-support arrearage portion of the claim—$40,468.87—through Fernandez's direct monthly payments to the state, to the extent those payments are attributable to the arrearage, and otherwise through the $680 minimum monthly payments made by the trustee. To the extent that any further part of Mills's claim is entitled to priority, the trustee would pay it as required by plan paragraph 2(c) of the plan (the paragraph relating to priority claims not otherwise classified). Finally, whatever portion of her claim is not entitled to priority would be paid as a general unsecured claim.

I summarize this treatment in the following table, in which $A_t$ represent the total portion of Mills's claim attributable to attorney fees, $A_p$ represent the subset of $A_t$ that is entitled to priority status, and $A_{np}$ represent the subset of $A_t$ that is not entitled to priority:

---

[23] Docket item 119 (plan modification).
[24] Plan modification at 7.

|  | Amount | Method of payment | Treatment |
|---|---|---|---|
| Child-support arrearage | $40,468.87 | (1) Paid in part directly by Fernandez to state;<br><br>(2) Otherwise paid by trustee, minimum of $680/mo. to state | Payment in full |
| Attorney fees entitled to priority | $A_p$ | Paid by trustee directly to Mills pursuant to plan ¶ 2(c) | Payment in full |
| Attorney fees not entitled to priority | $A_{np} = A_t - A_p$ | Paid by trustee directly to Mills pursuant to plan ¶ 2(f). | Payment pro rata along with other general unsecured claims. Probable distribution is 0%. |
| Other (i.e., the part of the claim for which Mills has never demanded priority treatment) | $7,200 | Paid by trustee directly to Mills pursuant to plan ¶ 2(f). | Payment pro rata along with other general unsecured claims. Probable distribution is 0%. |

I note that the above-described plan provisions only make explicit the treatment that I have already inferred as part of the existing confirmed plan.

Mills has objected to confirmation of the modified plan.[25] She complains that it provides, as did the November 29, 2016, order, that the $680 monthly payments will go to the state rather than to her. She gives no reason for objecting to the continuation of that approach, except that "[t]he State of Florida Disbursement Unit does not collect attorney fees, but only collects child support."[26] Otherwise, she objects on the ground that the modified plan will not pay her attorney fees.

I disagree with Mills for the following reasons. First, she has stated no cognizable objection to the plan's continuation of the existing approach whereby the trustee makes the $680 monthly payments to the state rather than to her. The fact that the state does not collect attorney

---

[25] Plan-modification objection.
[26] Plan-modification objection at ¶ 10.

Stephen Caplan
Juan Antonio Fernandez
March 13, 2018
Page 6

fees is unimportant, because the modified plan makes clear that the $680 monthly payments are attributable to child support, not to attorney fees.

Second, Mills's contention that the plan does not propose to pay her attorney fees is incorrect. To the extent that her attorney fees are entitled to priority treatment, the plan provides for their payment through paragraph 2(c). It is true that the attorney fees will receive less favorable treatment than the child-support portion of the claim, but that's no reason to deny confirmation. The Bankruptcy Code permits flexibility in the manner in which priority claims are paid, as long as the plan proposes to pay them in full before the end of its term.[27] And, to the extent that her attorney fees are not entitled to priority treatment, the plan properly treats them as general unsecured claims.

I understand that Mills's position is that the entirety of the attorney-fee portion of her claim is entitled to priority. To use the notation of the earlier table, Mills's position is that $A_p = A_t$, and thus $A_{np} = 0$. If she is correct, then the attorney-fee portion will have to be paid in full, and the plan so provides. If she is incorrect, i.e., if $A_p < A_t$, in which case $A_{np} > 0$, then the nonpriority part of the attorney-fee portion need not be paid in full. The plan does not purport to resolve this issue either way.

But the modified plan arguably falls short in one respect. Although it classifies the portions of Mills's claim in the manner described in the above table, it does not expressly say that the priority portions of the claim will be paid in full. I do not doubt that Fernandez's intention was to pay all priority portions of the claim in full, as is required by 11 U.S.C. § 1322(a)(2)—that intention has been implicit in his argument all along. But she is entitled to a clear and unambiguous statement of that treatment. Therefore, I will condition confirmation of the plan on his willingness to add to the plan a paragraph 17(d), which should read: "Those portions of the Mills Claim described in paragraph 17(a) and (b) above must be paid in full during the life of the plan."

IV.   **Conclusions and rulings**

I will deny the clarification motion to the extent that it seeks to alter or set aside the November 29, 2016, order, and I determine that the $680 monthly payments that the trustee has made and continues to make pursuant to the plan should be allocated to the child-support arrearage portion of Mills's claim. The court will prepare an order.

I will overrule Mills's objection to the plan amendment, subject to the addition by interlineation of the language set forth at the end of part III above. If Fernandez is willing to do

---

[27] 8 Collier on Bankruptcy ¶ 1322.03 (16th ed. 21017) ("[T]here is no requirement that . . . priority claims, except for fees and administrative expenses, be paid temporally in the prescribed order of priority or in advance of unsecured claims generally.")

that, he should inform the court in writing within 14 days. If he does not, I will set a further hearing to address the plan amendment.

                                                      Sincerely,

                                                      DAVID W. HERCHER
                                                      Bankruptcy Judge.